ORDER AND JUDGMENT*
STEPHEN H. ANDERSON, Circuit Judge.
Union Pacific Railroad Company (“Union Pacific”) filed this action seeking to enforce an indemnity provision in a contract relating to an industrial spur line on property belonging to the Dolese Brothers Company (“Dolese”). The district court denied Union Pacific’s motion for summary judgment and granted Dolese’s motion for summary judgment. Union Pacific appeals, and we affirm.
BACKGROUND
On May 13, 1985, Union Pacific and Dolese entered into an Industrial Track Agreement (“ITA”) to establish an industrial spur line on Dolese’s Sand Plant property in Dover, Oklahoma. As part of the construction of that line, derail devices were located close to each end of the spur line. The derail device is a safety mechanism that derails any railroad car which attempts to roll onto the main railroad line. Union Pacific padlocks the derail devices and maintains complete control over the keys to the padlocks. Union Pacific employees operate the derail devices as needed.
The ITA provided that Dolese “shall at all times keep the area between the rails and within the lateral clearance area ... free and clear of debris and/or obstructions of any kind or nature.” ITA at 4, Appellant’s App. Vol. I at 16. The Agreement also provided that Dolese would indemnify Union Pacific against “any and all claims, demands, expenses, costs and judgments” resulting from Dolese’s failure to perform its obligations, including the obligation to keep “debris and/or obstructions of any kind” off the spur line. Id.
On May 16, 2001, Union Pacific employee Charles M. Sykes suffered a back injury while attempting to operate the derail device at the Dolese Sand Plant. Union Pacific alleges that “Sykes[’j injury occurred because Dolese failed to properly maintain the derail device by allowing it to become full of sand and grit.” Appellant’s Opening Br. at 4. Union Pacific and Sykes reached a settlement in the sum of $180,000, with an additional $8,449.47 in attorney’s fees, in satisfaction of the rail *654 road’s nondelegable duty under the Federal Employers’ Liability Act (“FELA”), 45 U.S.C. § 51, to provide a safe workplace.
Union Pacific then brought this diversity action seeking to enforce either the indemnification or the contribution provision of the ITA. Both parties filed motions for summary judgment. The district court granted Dolese’s motion and denied Union Pacific’s. This appeal followed.[1]
Union Pacific argues the district court erred in (1) finding that sand in, on and around the derail device did not constitute “debris and/or obstructions of any kind or nature” under the ITA; (2) failing to find that the indemnity provision in the ITA requires Dolese to indemnify Union Pacific for the settlement costs and attorney’s fees incurred in the Sykes action; (3) denying Union Pacific a jury trial on the factual question of whether sand constituted “debris and/or obstructions of any kind or nature” under the ITA; (4) “determining that the derail device ... was not contemplated under the [ITA]”; (5) granting summary judgment to Dolese; and (6) denying summary judgment to Union Pacific. Appellant’s Opening Br. at 1-2.
DISCUSSION
We review de novo the district court’s grant of summary judgment. Zurich N. Am. v. Matrix Serv., Inc., 426 F.3d 1281, 1287 (10th Cir.2005); Mo. Pac. R.R. Co. v. Kan. Gas & Elec. Co., 862 F.2d 796, 798 (10th Cir.1988). We apply the same standards as did the district court. Thus, “[s]ummary judgment shall be granted if there is ‘no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.’ ” Zurich N. Am., 426 F.3d at 1287 (quoting Fed. R.Civ.P. 56(c)). Further, we “must resolve all ambiguities and draw all factual inferences in favor of the non-moving party.” Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As a federal court sitting in diversity, we must apply Oklahoma substantive law. See Reed v. Landstar Ligon, Inc., 314 F.3d 447, 450-51 (10th Cir.2002).
Under the FELA, “ ‘a railroad has the nondelegable duty to provide its employees with a safe place to work even when they are required to go onto the premises of a third party over which the railroad has no control.’ ” Mo. Pac. R.R. Co., 862 F.2d at 797 (quoting Shenker v. Balt. & Ohio R.R. Co., 374 U.S. 1, 7, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963)). Accordingly, Union Pacific required a guarantee of indemnification for expenses incurred as a result of injuries its employees might suffer while working on Dolese’s property. The ITA therefore contained the following language:
(f) [Dolese] shall at all times keep the area between the rails and within the lateral clearance area hereinbefore provided free and clear of debris and/or obstructions of any kind or nature....
(g) [Dolese] agrees to indemnify [Union Pacific] and save it harmless from and against any and all claims, demands, expenses, costs and judgments arising or growing out of loss of or damage to property whosesoever, or injury to or death of persons whomsoever, including the parties hereto, their agents and employees, occurring directly or indirectly by reason of any breach of the foregoing covenants to be kept by [Dolese] ... and regardless of whether caused or contributed to by any acts or omissions *655 o[f] [Union Pacific], its agents or employees.
ITA § 5(f), (g), Appellant’s App. Vol. I at 16.
The Oklahoma courts apply the following rules in construing the language of a contract:
If language of a contract is clear and free of ambiguity the court is to interpret it as a matter of law, giving effect to the mutual intent of the parties at the time of contracting. Whether a contract is ambiguous and hence réquires extrinsic evidence to clarify the doubt is a question of law for the courts.
Pitco Prod. Co. v. Chaparral Energy, Inc., 63 P.3d 541, 545 (Okla.2003) (footnotes omitted); accord S. Hospitality, Inc. v. Zurich Am. Ins. Co., 393 F.3d 1137, 1139 (10th Cir.2004) (discussing Oklahoma law on construing contracts). “The test for ambiguity is whether the language is susceptible to two interpretations on its face ... from the standpoint of a reasonably prudent lay person, not from that of a lawyer.” Spears v. Shelter Mut. Ins. Co., 73 P.3d 865, 869 (Okla.2003) (internal quotation omitted). “The mere fact the parties disagree or press for a different construction does not make an agreement ambiguous.” Pitco Prod. Co., 63 P.3d at 545. Further, we must consider a contract “as a whole so as to give effect to all its provisions.” Id. at 546. We accord the language in a contract “its plain and ordinary meaning unless some technical term is used in a manner intended to convey a specific technical concept.” Id.; see also S. Hospitality, Inc., 393 F.3d at 1139.
The district court applied those principles and interpreted the ITA as a matter of law as follows:
Neither litigant argues that § 5(f)-(g) is ambiguous; they merely differ as to whether or not sand constitutes “debris and/or [an] obstruction[ ]” in breach of the ITA. After viewing the ITA as a whole, the Court finds that § 5(f)-(g) is clear, unambiguous, and not susceptible to two reasonable interpretations; accordingly, the Court interprets § 5(f)-(g) as a matter of law.
Order at 6-7, Appellant’s App. Vol. II at 234-35. Applying the definition of “debris” contained in The American Heritage Dictionary 481 (3d ed.1992),[2] the court concluded that “Dolese’s product [sand] clearly does not fall within the plain and ordinary meaning of ‘debris.’ ” Order at 7, Appellant’s App. Vol. II at 235. After noting that the dictionary definition of “obstruction” in § 5(f)’s phrase “obstruction ] of any kind or nature” seems “all-inclusive,” id., the court interpreted the phrase in the context of the entire ITA: “the Court must view the ITA as a whole and give effect to all of its provisions in order to determine what the litigants’ intent was regarding obstructions on the Dolese spur track.” Id. at 8, Appellant’s App. Vol. II at 236. Thus, the court concluded that “it is clear from a complete reading of ITA § 5, entitled ‘Clearances,’ that the litigants intended to contract only for the unobstructed movement of Union Pacific’s trains for the full length of the Dolese spur track.” Id. The court summed up as follows:
Construing the ITA as a whole, using each clause to interpret the others, and giving effect to the litigants’ general intent, the Court finds that the sand which accumulated around the derail device does not constitute an obstruction as contemplated by the ITA. Therefore, Dolese did not breach the ITA and the *656 indemnification provision is not triggered.
Id. at 9, Appellant’s App. Vol. II at 237.
Union Pacific argues that the court erred in numerous ways in reaching that conclusion. We disagree.
As the district court correctly observed, both parties thought the provisions of ITA § 5(f) and (g) were clear and unambiguous; they just differed as to what those provisions meant. We agree with the court and with Dolese that the sand which spilled from trains loading sand from Dolese’s business was not “debris” or an “obstruction” within the meaning of the ITA read as a whole. It did not, and, in the quantities present in this ease, could not, impede the passage of trains along the spur, nor was it “debris” in the ordinary sense of the word.
In addition to the district court’s reasoning on that point, with which we agree, the evidence was undisputed that the derails were padlocked, that only Union Pacific employees had keys to unlock them, that only Union Pacific employees operated the derails and that the derails existed to protect trains passing along the Union Pacific main tracks. Thus, as Dolese argues, only Union Pacific employees could determine whether sand was impeding the operation of the derails.[3] Further, Union Pacific painted the derails periodically to ensure that they were visible. See Dep. of Billy R. Johnson, Appellant’s App. Vol. II at 203-05. It is accordingly clear that the parties intended that Union Pacific would maintain the derails in good operating condition, including keeping them free of sand to the extent necessary to ensure their proper operation. See Ill. Cent. R.R. Co. v. Standard Oil Co., 292 F.Supp. 337, 339 (S.D.Miss.) (denying railroad’s claim for indemnification for costs incurred as a result of railroad employee’s injury caused by defective grab-iron “in [the railroad’s] exclusive possession and control”), aff'd per curiam, 403 F.2d 1022 (5th Cir.1968).
CONCLUSION
For the foregoing reasons, we AFFIRM the district court’s decision granting Dolese’s motion for summary judgment and denying Union Pacific’s motion for summary judgment.

 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

. Union Pacific concedes that only the contractual indemnification claim is at issue in this appeal.

. The dictionary defined “debris” as “the scattered remains of something broken or destroyed; rubble or wreckage ... carelessly discarded refuse; litter."

. The injured employee, Sykes, allegedly suffered his back injury because it was more difficult than normal to operate the derail because of sand.